476 So.2d 864 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Manuel D.J. CAMPS, Defendant-Appellant.
No. 17280-KA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
Rehearing Denied October 24, 1985.
*865 Jack & Hudsmith by Wellborn Jack, Jr., Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, Henry Brown, Dist. Atty., and James M. Bullers, Asst. Dist. Atty., Bossier City, for plaintiff-appellee.
Before HALL, MARVIN and LINDSAY, JJ.
HALL, Chief Judge.
The defendant, Manuel D.J. Camps, and a codefendant, David R. Green, were charged by bill of information with the crime of possession of more than 400 grams of a Schedule II(A)(4) controlled dangerous substance, i.e., cocaine, in violation of LSA-R.S. 40:967 F(3). The defendant filed a motion to quash grounded on multiple contentions relating to his prosecution in federal court on charges arising out of the same drug transaction. Pursuant to a plea bargain with the state, Camps pled guilty to possession of 200 grams or more but less than 400 grams of cocaine under LSA-R.S. 40:967 F(2) and was sentenced by the trial court to serve ten years at hard labor without benefit of parole, probation, or suspension of sentence, the sentence to run consecutively with the sentence imposed by the federal court. Codefendant Green was found guilty as charged by a jury and has separately appealed his conviction and sentence. See State v. Green, 476 So.2d 859 (La.App. 2d Cir.1985). Camps has appealed contending that the trial court erred in overruling his motion to quash and that the trial court imposed an excessive sentence. For reasons to follow, we affirm defendant Camps' conviction, *866 amend the sentence imposed, and remand to the district court.
FACTUAL AND PROCEDURAL BACKGROUND
The two convictions are the result of an undercover drug investigation involving law enforcement authorities of both the State of Louisiana and the United States. In April of 1984 undercover FBI agents negotiated the purchase of 2 kilograms of cocaine from Green for $80,000.00. Green had indicated he was interested in selling one kilogram of cocaine each week during the racing season at Louisiana Downs, and agents produced $250,000.00 in "show money."
On the afternoon of April 13, Green met defendant Camps at a New Orleans airport and both men flew back to Shreveport on the same day. At 5:00 p.m. on that day Green contacted the undercover agent and indicated that he and his partner, defendant Camps, were ready to consummate the deal. A meeting was set up at the Sheraton Inn in Bossier City.
The undercover agents met Green and Camps in Room 104 of the Sheraton Inn. After a short conversation, Camps asked Agent Cleveland to "check on the stuff." Camps and Agent Cleveland then proceeded to Room 116 while Green and Agent McGee waited outside the room by the pool. Agent Cleveland was wired with a transmitting device and federal, state, and local law enforcement authorities waited in an office behind the front desk of the Sheraton Inn listening to the transaction.
Once inside Room 116, Agent Cleveland observed Camps walk to the back of the room and remove a blue shaving kit from a clothes bag hanging in a closet. Camps opened the shaving kit and pulled out a white, powdery substance wrapped in newspaper and plastic. Agent Cleveland took a sample from the packet for testing purposes. At that time law enforcement officers began approaching Room 116 and upon hearing noise outside, Camps looked outside the window while Agent Cleveland opened the door of the room to allow the arresting officers inside. Camps was placed under arrest and a package of cocaine lying on the bed was seized. A subsequent search of the room revealed another package of cocaine concealed in a trash can.
Camps and Green were both indicted by a grand jury of the United States District Court for the Western District of Louisiana" and charged with one count of conspiracy to possess cocaine with the intent to distribute, eight counts of unlawful use of communication facilities, and one count of attempted distribution of cocaine. Defendant Camps entered into a plea bargain with the United States which obligated him to render substantial assistance to the federal government in their undercover drug operations. In return, the federal prosecutor agreed to recommend to the state court (1) that defendant Camps receive no greater sentence in state court than he receives in federal court; (2) that any state sentence run concurrently with any federal sentence imposed; and (3) that any state sentence be served in a federal penal institution.
Defendant Camps then filed a motion to quash in the state district court alleging that his continued prosecution in state court violated principles of due process and fundamental fairness and exposed him to excessive punishment in violation of LSA Const. Art. 1, Sec. 20. The district court denied defendant Camp's motion.
Defendant subsequently entered into a plea bargain with the state. There were five "inducements" to the entry of Camps' plea of guilty, agreed to by the defendant and the state. First, Camps was allowed to enter a plea of guilty to the lesser offense of possession of between 200 and 400 grams of cocaine in violation of LSA-R.S. 40:967 F(2). Second, Camps reserved the right to appeal the district court's ruling on the motion to quash. Third, the district attorney agreed to make no recommendation as to any specific sentence and would urge only that the court consider all relevant circumstances in imposing sentence, and specifically that that court consider the quantity of cocaine actually involved (2 kilograms rather than 200 and 400 grams), *867 and that the court consider the quality of the substantial assistance rendered to the federal government as the kind of substantial assistance contemplated by LSA-R.S. 40:967 G(2). Fourth, there would be no state presentence investigation ordered by the court. And fifth, the state sentencing would occur after sentencing in federal court and the defendant would be remanded to federal custody.
On August 14, 1984, defendant Camps was sentenced in United States District Court to five years imprisonment on the conspiracy count, imposition of sentence on the remaining counts was suspended, and Camps was placed on five years supervised probation to follow completion of the five year term of imprisonment.
Pursuant to Camps' plea bargain with the federal government, an Assistant U.S. Attorney reported to the state district court that defendant had "technically" complied with their agreement in cooperating and rendering substantial assistance to the United States. Due to defendant Camps' compliance with his plea bargain with the federal government, the Assistant U.S. Attorney recommended to the court that defendant Camps receive no greater sentence in the presently pending state prosecution than he received in the federal prosecution, that the sentence, if any is imposed, run concurrently with the federal sentence imposed, and that any state sentence imposing a term of imprisonment be served in a federal penal institution. Defendant was subsequently sentenced by the district court to serve ten years at hard labor, the sentence to run consecutively to the sentence imposed by the federal court.
ASSIGNMENT OF ERROR NO. 1MOTION TO QUASH
By this assignment of error Camps complains of the denial of his motion to quash filed after Camps had pled guilty to all ten counts of the federal indictment which exposed Camps to a maximum possible penalty in federal court of 62 years imprisonment or a fine of $290,000.00 or both. It is argued that in this factual context and sequence, Camps' continued prosecution and subsequent punishment by the state of Louisiana for the same drug transaction giving rise to the federal indictment violated due process and fundamental fairness and exposed him to the imposition of excessive punishment prohibited by Article 1, Section 20 of the Louisiana Constitution.
Defendant concedes that both the United States Supreme Court and the Louisiana Supreme Court have squarely held that successive federal and state prosecutions do not violate the federal or state constitutional prohibitions against double jeopardy. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); State v. Smith, 359 So.2d 160 (La.1978); State v. LeCompte, 441 So.2d 249 (La.App. 4th Cir. 1983), writ denied 446 So.2d 314 (La.1984). Defendant argues, however, that the motion to quash is not "necessarily" grounded upon the prohibition against double jeopardy and that it is not necessary to overrule the jurisprudence. It is argued that successive state and federal prosecutions can and should be barred as a matter of policy, statutory interpretation, and state constitutional law, separate and distinct from the double jeopardy bar. Defendant urges the approach and result of the Supreme Court of Pennsylvania in Commonwealth v. Mills, 447 Pa. 163, 286 A.2d 638 (1971) which held that in Pennsylvania a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interest of the state and the jurisdiction which initially prosecuted and imposed punishment are substantially different. The court in Mills reached its conclusion without relying on double jeopardy and, indeed, without resting the decision on any state constitutional or statutory provision. It is clear, however, that the Pennsylvania court disagreed with and took issue with the authoritative cases holding that double jeopardy does not bar successive federal and state prosecutions, finding that these *868 decisions failed to recognize that the interests of the two sovereigns might be the same and failed to examine the interest of the individual.
Defendant also notes that several state courts have held that the double jeopardy provision of the state constitution bars successive federal and state prosecutions. Other states regulate the matter by statute. See Annot., 6 A.L.R. 4th 802 (1981). Defendant further points out that although double jeopardy does not bar federal prosecution following state prosecution, under the "Petite" policy adopted by the United States Department of Justice, a federal trial following a state prosecution is barred absent compelling reasons. For an explanation of the "Petite" policy, see Rinaldi v. United States, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). It is urged that this court should mandate such a policy for the State of Louisiana.
The prohibition against double jeopardy contained in both the United States and Louisiana constitutions is essentially a specific rule of due process and fundamental fairness. The federal constitutional prohibition against double jeopardy is applicable to the states through the due process clause of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1979). The arguments presented by defendant in this case have implicitly and inherently been rejected by the decisions of the United States and Louisiana supreme courts holding that the prohibition against double jeopardy does not bar successive prosecutions by the federal government and by the state government. To accept defendant's arguments would be to, in effect, overrule the controlling jurisprudence. It would be inappropriate for this intermediate appellate court to abandon or depart from such a firmly established rule of law clearly enunciated by the United States and Louisiana supreme courts, and codified by the state legislature in LSA-C.Cr.P. Art. 597, under perceptions of fundamental fairness or policy considerations not founded directly on constitutional or statutory provisions.
Defendant also argues that the motion to quash should have been granted because defendant was exposed to excessive punishment in violation of Article 1, Section 20 of the Louisiana Constitution by a subsequent prosecution under the harsh provisions of the criminal statute containing a mandatory minimum sentence of 10 years without benefit of suspension, probation, or parole. Defendant cites State v. Goode, 380 So.2d 1361 (La.1980) in which a motion to quash was sustained and the penalty provisions of a criminal statute declared unconstitutional where the mandatory nature of the penalty could result in a sentence which was disproportionate to the severity of a particular crime.
This argument is without merit. First, the mandatory minimum sentence provided by LSA-R.S. 40:967 F(2) was upheld against constitutional attack in State v. LeCompte, 406 So.2d 1300 (La.1981) as justified by the serious nature of the crime. Second, the defendant in this case was not necessarily exposed to a mandatory consecutive sentence as was the case in State v. Goode, supra, because of the discretion granted the sentencing judge under LSA-C.Cr.P. Art. 883.1 to make the state sentence run concurrent with the federal sentence and also because of the discretion granted to the sentencing judge under LSA-R.S. 40:967 G(2) to reduce or suspend the sentence upon a finding that the defendant rendered substantial assistance in the identification, arrest, or conviction of other parties or conspirators.
Assignment of error number one is without merit.
ASSIGNMENT OF ERROR NUMBER 2 EXCESSIVE SENTENCE
By this assignment of error the defendant contends that his sentence to ten years imprisonment at hard labor without benefit of suspension of sentence, probation, or parole to be served consecutively with his five year federal sentence is constitutionally excessive in violation of Louisiana Constitution Article 1, Section 20. Defendant emphasizes that he cooperated with and rendered substantial assistance to the United *869 States by making certain disclosures as to knowledge of persons involved in the drug trade pursuant to his federal plea bargain; that he was sentenced in federal court to five years imprisonment and placed on five years supervised probation to follow completion of the sentence of imprisonment; that the federal prosecutor made recommendations to the state court that defendant receive no greater state sentence than the federal sentence to run concurrently with the federal sentence and to be served in a federal penal institution; and that the sentencing state judge found the defendant to be a good family man, a first offender, and unlikely to commit another offense.
Defendant's principal argument is that the state sentence should have been made to run concurrently with the federal sentence under the established rule that ordinarily, concurrent rather than consecutive sentences should be imposed on a first felony offender where the convictions arise out of the same course of conduct within a relatively short period of time and in the absence of showing that the public safety requires a longer sentence.
Under LSA-R.S. 40:967 G(2), the sentencing court is granted the discretion to reduce or suspend the sentence of any person who provides substantial assistance in the identification, arrest, or conviction of other parties or conspirators of the crime for which he was convicted or to related crimes. This discretion can be exercised either on motion of the district attorney, motion of the defendant, or on the court's own motion. State v. LeCompte, 406 So.2d 1300 (La.1981). The decision to reduce or suspend a sentence under the provisions of the statute is discretionary with the sentencing judge. State v. Howard, 448 So.2d 150 (La.App. 1st Cir.1984). In this case the sentencing judge was made aware of the provisions of the defendant's plea bargain in federal court and of the fact that he had complied with the plea bargain in providing assistance to the federal authorities. However, the sentencing judge exercised his discretion not to reduce or suspend the minimum sentence under the statute, emphasizing the seriousness of the crime committed by the defendant. We find no abuse of discretion by the trial court in this respect.
The most serious issue presented by this sentence review is whether the imposition of a consecutive sentence rather than a concurrent sentence was justified by articulated, substantial reasons. LSA-C.Cr.P. Art. 883 provides that if the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. The Louisiana Supreme Court has determined that a sentencing judge must adequately justify consecutive sentences for crimes arising from a single course of conduct. In State v. Sherer, 437 So.2d 276 (La.1983), the court stated:
Because the function of the consecutive sentence should be similar to the sentence imposed on habitual or dangerous offenders, sentences for crimes arising from a single course of conduct should be concurrent rather than consecutive, absent a showing that the offender poses an unusual risk to the safety of the public. See State v. Franks, 373 So.2d 1307 (La.1979); State v. Cox, 369 So.2d 118 (La.1979). Cf. La.C.Cr.P. art. 883. We cannot presume that the sentencing judge viewed the defendant as an unusual risk to the safety of the public because he did not so state, although that may, in fact be the case.
The general preference for concurrent sentences rather than consecutive sentences was recognized in State v. Underwood, 353 So.2d 1013 (La.1977) and again in State v. Ortego, 382 So.2d 921 (La.1980) in which the court observed that "based on the American theory and practice, concurrent rather than consecutive sentences are the usual rule, at least for a defendant without previous record and in the absence of a showing that the public safety requires a longer sentence." Consecutive sentences *870 may be justified when, due to his past conduct or repeated criminality over an extended period, the offender poses an unusual risk to the safety of the public, similar to those posed by habitual or dangerous offenders. State v. Carter, 412 So.2d 540 (La.1982).
LSA-C.Cr.P. Art. 883.1 specifically provides that the sentencing court may specify that the sentence imposed be served concurrently with a sentence imposed by a federal court and that service of the concurrent terms of imprisonment in a federal correctional institution shall be in satisfaction of the sentence imposed in this state. When serving a concurrent sentence in a federal correctional institution the defendant shall only receive credit for time actually served in respect of the sentence imposed under the laws of this state. There is no persuasive reason why the preference for concurrent sentences for offenses based on the same act or transaction should not apply to multiple state and federal sentences as well as to multiple state sentences.
In the case of defendant Camps, the federal and state offenses arose out of the same acts or transaction and constituted parts of a common scheme or plan as noted by the trial court. There is no showing that the defendant has a prior felony record. The record does not reflect that the defendant poses an unusual risk to the safety of the public similar to that posed by a habitual or dangerous offender. To the contrary, the trial court specifically found that defendant is a good family man, that this is the defendant's first offense, and that it does not appear from anything in the defendant's record that he would be likely to commit another offense. The seriousness of the crime, quite correctly emphasized by the trial court, does not alone provide justification for the imposition of a consecutive sentence under the standards established by the Louisiana Supreme Court. In holding that the trial court abused its discretion by ordering the state sentence to run consecutively to the federal sentence and that the sentence is excessive to that extent, we also take into consideration the compliance of the defendant with his agreement to provide federal authorities with substantial assistance as reported by the federal prosecutor, the need for and desirability of cooperation between state and federal officials as was demonstrated by the successful apprehension and prosecution of this defendant, and the need for care and restraint in the pursuit of successive state and federal prosecutions in order to avoid the sometimes harsh consequences which the prohibition against double jeopardy is designed to prevent, even though double jeopardy is not applicable in this case.

DECREE
For the reasons assigned, the conviction of the defendant is affirmed. The sentence is amended to specify that the sentence imposed be served concurrently with the sentence previously imposed by the federal court in accordance with LSA-C.Cr.P. Art. 883.1. The case is remanded to the district court for entry of such further orders and procedures as may be necessary or appropriate to effectuate the sentence in accordance with Article 883.1.
CONVICTION AFFIRMED; SENTENCE AMENDED; CASE REMANDED.