541 So.2d 336 (1989)
STATE of Louisiana, Appellee,
v.
Eric STEWART, Appellant.
No. 20279-KA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
*337 Hunter, Scott, Blue, Johnson & Ross by Robert C. Johnson, Monroe, for defendant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Eric Stewart, was tried by a twelve person jury and convicted of two counts of distribution of cocaine, violations of LSA-R.S. 40:967. Sentences of five years at hard labor on each count were imposed and ordered served consecutively. Defendant appeals, raising three assignments of error. We affirm.

FACTS
On December 1, 1986, shortly after 8:00 p.m., Officer Ray Tippett, a Monroe policeman assigned to the Metro-Narcotics Unit as an undercover agent, traveled in the vehicle of a confidential informant to 4213 Booker Street in Monroe. There, after being introduced to the defendant by the informant, Officer Tippett purchased a quantity of "crack" cocaine for $50. The transaction took place next to the driveway in the front yard of the residence and was completed in approximately six minutes. A concealed microphone and radio transmitter were carried by Officer Tippett at the time. Two other officers, in a surveillance vehicle parked nearby, taped the conversations surrounding the purchase.
On December 2 at about 9:00 p.m., Officer Tippett returned to the same location with the confidential informant. On this same occasion, the officer was driving his own pickup truck. He was again equipped with a microphone and accompanied by the surveillance team which parked within audio range of the device. After a male voice from inside the residence instructed him to do so, Officer Tippett went to the rear of the house where he knocked on the back door. A bedroom window was opened by a black male wearing a white tee shirt, the defendant, from whom Officer Tippett purchased cocaine for $50.
The defendant later was arrested and charged with the two offenses. At trial he offered no evidence in his defense.

Assignment of Error No. 1
Defendant contends that the jury erred in finding him guilty based on the evidence presented at trial. Although appellate review of a criminal conviction is limited to questions of law, LSA-Const. Art. 5, § 5(C) (1974), a determination of whether the evidence is sufficient to support a conviction presents a question of law. State v. Camp, 446 So.2d 1207 (La. 1984). In reviewing the sufficiency of evidence, an appellate court must determine if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). Of course, proper application of the foregoing standard involves a review of the record.
*338 During the trial, the state produced four witnesses, the first of whom was Officer Kirk Petterson, a surveillance officer during both drug purchases. Officer Petterson testified that he listened to and recorded the transactions through the body mike worn by Officer Tippett. His undercover vehicle was located about 100 yards from the Booker Street residence.
The first purchase, Officer Petterson recalled, lasted approximately 5-6 minutes after its 8:00 p.m. inception. After the "deal" was concluded, he and Officer Tippett met back at his office. Officer Tippett relinquished the suspected cocaine which was then packaged and initialed by both officers.
Officer Petterson stated that the second transaction began at about 9:00 p.m. After the substance sale was completed, Officer Tippett and the suspect traveled to a public telephone located at a convenience store about a mile away. Once again, Officers Petterson and Tippett returned to the station where the cocaine was transferred, bagged and initialed.
On cross-examination, Officer Petterson testified that he was familiar with the neighborhood. However, he admitted that he could not see the purchases and, instead, could only hear the transactions through the microphone. He had seen the defendant one time prior to the first drug deal.
Officer Ray Tippett next testified and identified the defendant in court as the individual with whom he conducted business on both occasions. He recalled meeting the defendant in the driveway of the Booker Street residence and making a purchase which took about six minutes to complete. He then placed the suspected cocaine, unwrapped, in his right front shirt pocket.
Officer Tippett stated that the second encounter began about 9:00 p.m. on December 2 and lasted about four minutes. Having promised to transport the defendant to a telephone, Officer Tippett waited in the truck for him to dress. During the ride he familiarized himself with the defendant's appearance since the defendant rode on the passenger side of the vehicle. After the phone call, he returned the defendant to Booker Street.
On cross-examination, Officer Tippett stated he was first hired by the Monroe Police Department in September, 1986, and assigned to the Narcotics Unit no more than one month prior to the transactions here involved. He testified that he received classroom training prior to serving in the undercover capacity. Significantly, he was instructed to pay close attention to an individual's features in order to facilitate proper identification.
According to Officer Tippett, the substance he purchased was placed in his pocket in its original form, that of a rock, and it was not in any container. Upon the defense questioning him concerning his testimony at the preliminary examination that the alleged crack cocaine had been in "plastic triangular containers," Officer Tippett admitted he was mistaken in his earlier testimony. He further acknowledged the transactions occurred at night, the first transpiring in front of the house. Although Officer Tippett could recall no streetlights where the first purchase occurred, he stated that the lights inside the house were on and illuminated the driveway and front yard. He also testified that there was a streetlight radiating on the back of the house at the time of the second buy.
Kimvola Lowens was called as the next witness. She resided at 4213 Booker Street and identified some pictures of her house. Ms. Lowens confirmed that the defendant was a guest in her home during December of 1986. However, she did not see Officer Tippett on the day of either drug purchase.
Linda Armstrong, a criminalist at the North Louisiana Crime Lab in West Monroe, examined the two rock-like objects purchased by Officer Tippett. She found both items to be cocaine.
In challenging his credibility, the defense asserts that: Officer Tippett had no previous law enforcement undercover training; he had no previous acquaintance with the *339 defendant; the drug transactions occurred at night in poor lighting and were of short duration; the defendant was not arrested at the time of the transactions; Officer Tippett did not identify the defendant from any type of line-up; the description that the officer gave of the defendant was in terms of the clothing worn; and a contradiction existed between Officer Tippett's testimony at the preliminary examination and his testimony at trial concerning the packaging of the contraband.
Notwithstanding such efforts to impugn Officer Tippett's testimony, the record also reveals the following pertinent facts. Officer Tippett stated that he had special classroom training to equip him as an undercover agent, including instructions on how to identify drug dealers. While both transactions occurred at night, the first purchase occurred in front of the house with the lights of the residence turned on and shining out. A street lamp provided lighting for the second transaction. As previously mentioned, Officer Tippett stated he had sufficient time to commit the defendant's features to memory during the ride to and from the telephone. The purchases were completed in the midst of a larger, ongoing drug investigation in which the officer was involved in an undercover capacity. Had the defendant been arrested immediately after the transactions, the drug community would have been alerted to the officer's status.
Kimvola Lowens' testimony served to further connect the defendant with the residence where the purchases occurred. Although she stated she did not see Tippett on either occasion, the drug transactions were negotiated outside of the house itself.
The determination of credibility of witnesses rests with the finder of fact. Here, the jury observed the witnesses before them and heard all their testimony. Officer Tippett's identification of the defendant patently was crucial to the case; and the credibility of the officer obviously was established to the jury's satisfaction. Moreover, the case by the state was unrebutted.
Certainly, considering all the evidence in the light most favorable to the prosecution, a rational trier of fact could find guilt beyond a reasonable doubt. Compare State v. Higgins, 501 So.2d 856 (La.App. 5th Cir.1987), where the testimony of an undercover officer, proof of the chain of custody and a chemical analysis were sufficient evidence to properly support a conviction. We likewise find sufficient evidence in the present case. This assignment of error is without merit.

Assignments of Error Nos. 2 and 3
Defendant's second and third assignments of error relate to whether there is excessiveness in the sentences imposed. Specifically, he contends that the trial court failed to properly comply with LSA-C.Cr.P. Art. 894.1 and that the sentence is constitutionally excessive.
The test imposed in determining excessiveness of a sentence is two-pronged. First, the record must show that cognizance was taken of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So. 2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
At the sentencing hearing, the trial court remarked that the defendant was a youthful offender, being only 19 years old. However, he did have a juvenile record containing one drug related offense. Also he was charged with grand theft auto in California, which was seemingly reduced to a misdemeanor. The court observed that the defendant's family life was unstable, with all five of his siblings being the issue of separate, non-marital unions. Defendant had never been married and his unemployed status also was noted. He likewise possessed no military or Job Corps experience *340 despite an eleventh grade education. Correctly observing that the defendant was convicted of a serious offense, the court concluded that any lesser sentence would deprecate the gravity of the crime. Thus, the record shows that the trial court adequately considered the criteria of LSA-C. Cr.P. Art. 894.1.
Next, we must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So. 2d 355 (La.1980). It is well-settled that the sentencing judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra. A trial court is not required to render a suspended sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983).
The pre-sentence investigation report revealed that the defendant spent 26 days in jail following his arrest in California on October 17, 1986, for grand theft of an automobile. Unsupervised probation for two years was ordered. During the present imposition of sentence, the court indicated the defendant would be unlikely to respond affirmatively to probation given his failure to learn from his California experience.
The sentence imposed, five years on each count, is the minimum permitted by LSA-R.S. 40:967. Thirty years and a $15,000 fine is the maximum allowed. That consideration, in combination with the defendant's personal history and the nature of the criminal activity involved, establishes that the length of the sentence is far from constitutionally excessive. No abuse of the trial court's discretion occurred.
Finally, we address defendant's contention that the sentences should be served concurrently rather than consecutively. If one is convicted of two or more offenses which are based on the same act or transaction or which are parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. Art. 883. Concurrent rather than consecutive sentences are the usual rule for convictions arising out of a single course of conduct, at least where the offender has no previous criminal record and where there is no showing that public safety requires otherwise. State v. Young, 432 So.2d 1012 (La.App. 1st Cir.1983).
Clearly, defendant's activities on two separate days were not the same act or transaction. In that the sales involved the same substance, undercover officer, and location, they could possibly be viewed as part of a common scheme or plan. Yet, defendant's active involvement in drug dealings, discussed hereinafter, compounded with his sales to a virtual stranger, more likely supports a different conclusion. Since consecutive sentences are appropriate for other reasons, we need not resolve the question.
The record reveals that the defendant offered Officer Tippett a discount price for the purchase of larger quantities of drugs. During both transactions, he offered to sell more cocaine than the agent purchased. Also, for those occasions when he might be unavailable, he provided the name of another vendor who could be contacted. Such evidence, it need hardly be mentioned, indicates the defendant was in the business of selling drugs.
In addition, as previously observed, the pre-sentence investigation revealed that defendant committed a drug related offense as a juvenile at age 17 in California. The PSI report also shows that his auto theft arrest and incarceration in Los Angeles occurred less than two months before the *341 instant offenses were committed. Moreover, on January 8, 1987 little more than a month after the two present crimes, he was again arrested for allegedly distributing cocaine in Ouachita Parish. Prosecution of that charge was not pursued, however.
In short, defendant's persistent criminal behavior, coupled with his diligent involvement in drug trafficking, demonstrates that public safety requirements supported the consecutive sentences imposed by the trial judge.

CONCLUSION
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.