561 So.2d 892 (1990)
STATE of Louisiana, Appellee,
v.
Larry D. MILLER, Appellant.
No. 21444-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
Larry Jefferson, Monroe, for appellant.
James A. Norris, Jr., Dist. Atty., Charles Brumfield, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, NORRIS and LINDSAY, JJ.
*893 LINDSAY, Judge.
The defendant, Larry D. Miller, was found guilty as charged after a jury trial on two counts of distribution of marijuana and one count of distribution of cocaine, in violation LSA-R.S. 40.966 & 967. He was sentenced to imprisonment at hard labor for five years on each count. The trial court ordered that the sentences for the marijuana charges be served concurrently with each other. The court further ordered that the sentence for the cocaine conviction be served consecutively to the other sentences.

FACTS
In February of 1988, Deputy Sheriff Robert Henry of the Union Parish Sheriff's Office participated in an undercover narcotics investigation in Bastrop, Louisiana. Deputy Henry was to assist Officer Gary Freeman of the Bastrop Police Department. On February 3, 1988, Officer Freeman sent Deputy Henry and a reliable confidential informer (RCI) to seek out illegal drug sales in Bastrop.
Deputy Henry and the RCI went to Whaley's Lounge, where they encountered Leroy Bates. Bates informed them that he could secure illegal drugs for them. Bates made a telephone call, and shortly thereafter a customized, 1986 black Cadillac drove up in front of the lounge. Deputy Henry gave Bates $130 ($80 for one ounce of marijuana and $50 for a half-gram of cocaine). Bates then gave the money to the driver of the Cadillac who drove away. The vehicle returned about 15 minutes later.
Upon its return, Deputy Henry got in the vehicle and exchanged introductions with the driver, who identified himself as either "Larry" or "Larry Miller." The driver proceeded a short distance from the lounge and pulled in a private driveway. The driver produced two baggies from between his legs and handed them to Officer Henry. One baggie contained a green vegetable matter, while the other contained a white, powdery substance. The driver then returned to the lounge and dropped off Deputy Henry.
Immediately thereafter, Deputy Henry met with Officer Freeman and gave him the baggies. Subsequent analysis at the North Louisiana Criminalistic Laboratory demonstrated that the baggies contained marijuana and cocaine.
Deputy Henry also told Officer Freeman the name given him by the driver. When they returned to the police department, Officer Freeman showed the deputy a photo of the defendant. Deputy Henry positively identified the man in the photo as the driver of the Cadillac.
On February 10, 1988, Deputy Henry returned to the same lounge. He approached the defendant, who was standing outside, and told him that he wished to purchase more drugs, preferably marijuana. The deputy gave him $80 for the purchase. The defendant left and returned 15 to 20 minutes later. Deputy Henry got in the defendant's car, where the defendant gave him a baggie. The contents of this baggie were later found to be marijuana.
During their conversation, the defendant told Deputy Henry that he preferred selling cocaine and that he usually conducted his deals at the local motel. The defendant encouraged the deputy to contact him for future cocaine purchases. After the transaction was completed, Deputy Henry met with Officer Freeman to transfer custody of the evidence, i.e., the baggie.
On March 3, 1988, Officer Freeman and Deputy Henry were together in the parking lot at the Bastrop Police Department when the defendant drove through the parking lot. Deputy Henry, who was still assisting in area narcotics investigations, saw the defendant and attempted to duck down out of sight. Certain that the defendant had seen and recognized the two officers together, Officer Freeman arrested the defendant.
A bill of information was filed on March 22, 1988, charging the defendant with two counts of distribution of marijuana, in violation of LSA-R.S. 40:966, and one count of distribution of cocaine, in violation of LSA-R.S. *894 40:967.[1]
On January 24, 1989, a preliminary examination was held. Both Deputy Henry and Officer Freeman testified. Probable cause for the charges was found.
Trial by jury was held on April 24 & 25, 1989. The state again presented the testimony of the two law enforcement officers, as well as evidence from the crime lab, identifying the marijuana and the cocaine. The defense presented the testimony of Bates, who denied introducing Deputy Henry to the defendant or otherwise participating in any drug transaction. The jury convicted the defendant as charged on all three counts.
On June 16, 1989, the trial court sentenced the defendant to imprisonment at hard labor for five years on each of the three counts. The court directed that the sentences on the marijuana charges be served concurrently, and that the sentence for the cocaine charge be served consecutively to the other charges.
The defendant appeals from his convictions and sentences. He assigns as error the following: (1) that the jury erred in finding that the evidence presented at trial was sufficient to convict him where there were several discrepancies between Deputy Henry's testimony at the preliminary examination and at the trial; and (2) the trial court erred in imposing excessive sentences by ordering him to serve five years at hard labor on each charge and in ordering one sentence to be served consecutively to the others.

SUFFICIENCY OF EVIDENCE
The defendant contends that the evidence presented by the state was insufficient to support the jury's verdicts of guilty. In particular, he argues that the state failed to prove beyond a reasonable doubt that he was the person who sold the drugs to Deputy Henry. He points to several alleged discrepancies between Deputy Henry's trial testimony and his earlier testimony at the preliminary examination. He claims that these discrepancies cast suspicion upon the deputy's general credibility and his identification of the defendant in particular.
In reviewing sufficiency challenges, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational factfinder could have found that the state proved beyond a reasonable doubt that the defendant committed the acts necessary to constitute every element of the offense charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied 544 So.2d 398 (La. 1989).
Where there is conflicting testimony as to factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not of its sufficiency. A determination of the weight of the evidence is a question of fact over which this court has no appellate jurisdiction in criminal cases. La. Const. 1974, Art. 5, § 10(B); State v. Henry, 457 So.2d 1244 (La.App. 1st Cir.1984). Thus, a determination of the weight of the evidence rests solely in the sound discretion of the trier of fact and is not reviewable on appeal. State v. Henry, supra.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986).
The discrepancies alleged by the defendant include conflicts as to whom Deputy Henry handed the money during the first drug transaction. At the preliminary examination, the deputy testified that he gave the money directly to the defendant whereas at trial he testified that he gave it to Bates, who then handed it to the defendant. Also, there was some question as to the circumstances whereby Deputy Henry learned of the defendant's full name. In his report, the deputy wrote that the defendant introduced himself as "Larry." At *895 the preliminary exam, he corroborated this and testified that Bates identified his supplier as "Larry Miller." However, at trial he testified that the defendant introduced himself in the car as "Larry Miller." (Officer Freeman testified consistently at both proceedings that when he and the deputy met after the first purchase, Deputy Henry identified the evidence as being secured from one "Larry Miller.")
Two other alleged discrepancies involve Deputy Henry's description of the driver. In his report, he described the man driving the Cadillac as weighing between 150 to 160 pounds and he made no reference to the man wearing glasses. At trial, he testified that the man's weight was between 160 to 170 pounds and that he wore glasses.
Finally, there was some question as to whether Deputy Henry was shown only the defendant's photograph or whether he was shown several photos. Both officers testified that they could not recall whether Deputy Henry was also shown other photographs at the same time.
We find that the discrepancies in Deputy Henry's testimony referred to his credibility, not to the sufficiency of the evidence. The alleged discrepancies in his description of the driver are minor, at best. Obviously there was some confusion as to whom Deputy Henry gave the money at the first transaction (to the defendant or to his associate, Bates) and as to when he learned of the defendant's full name. However, Deputy Henry's testimony clearly established that, regardless of whether the money momentarily passed through the hands of an intermediary, the $130 for the first drug purchase was accepted by the defendant, who subsequently returned with the marijuana and cocaine. Furthermore, based upon Deputy Henry's description of the defendant and his vehicle, as well as the name supplied to him by either Bates or the defendant that first evening, Officer Freeman was able to produce a photograph of the defendant, which the deputy was able to positively identify.
The defendant attacks Deputy Henry's identification of him as being highly suggestive and unreliable. Factors to be considered in determining the reliability of an identification are: (1) the witness' opportunity to view the suspect at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness' certainty displayed at the time of the identification; and (5) the length of time elapsed between the crime and the identification. State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987).
In State v. Lewis, 478 So.2d 665 (La.App. 2d Cir.1985), this court found that there was no significant chance of misidentification where an undercover police officer identified a suspect after being shown a single photograph of an individual whose name and occupation matched that given to her by the drug seller. The undercover officer's status as a trained police officer engaged in a controlled narcotics buy was emphasized. Consequently, she was well aware that she would be called upon to testify as to her identification of the suspect.
Likewise, we note that Deputy Henry was an experienced law enforcement officer, not a victim or a casual observer. He was well aware of the importance of future identification of the suspect. He saw the defendant on two separate occasions. While the lighting in the defendant's car was apparently dim during the first purchase, the deputy obviously observed the defendant well enough to recognize him a week later to arrange the second purchase of marijuana.
We are not aware of any major inaccuracies between Deputy Henry's description and the defendant's photograph. Additionally, Deputy Henry was shown the photo the same night as the first transaction and he was able to positively identify the defendant.
At trial, the defendant argued to the jury in detail the issue of Deputy Henry's credibility. Obviously, the jury found the account given by Deputy Henry to be more credible than that of Bates, a convicted criminal. We find the jury was presented *896 with sufficient evidence to support the defendant's convictions.
This assignment of error is without merit.

EXCESSIVE SENTENCE
The defendant also argues that the trial court erred by imposing unconstitutionally excessive sentences. He contends that the trial court improperly ordered that the sentence for count # 2 (cocaine) be served consecutively to the sentences for count # 1 and count # 3. He bases this argument on the fact that count # 1 arose from the same transaction as count # 2.
LSA-C.Cr.P. Art. 883 provides, in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently....
There is a presumption of concurrent sentences for same-transaction crimes. In order to rebut the presumption without an abuse of discretion, the trial court must "expressly direct" consecutive sentences and explain the reasons. State v. Ashley, 463 So.2d 794 (La.App. 2d Cir.1985). However, consecutive sentences may be justified when, due to the defendant's past conduct or repeated criminality over an extended period, the defendant poses an unusual risk to the safety of the public, similar to those posed by habitual or dangerous offenders. State v. Camps, 476 So.2d 864 (La.App. 2d Cir.1985), writ denied 481 So.2d 616 (La.1986), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986).
We find no error in the trial court's order directing that the sentence for count # 2 be served consecutively to that for count # 3. These two distinct transactions carried out a week apart and paid for separately are not part of a common scheme or plan, even though they involved the same undercover officer and the same location. See State v. Reed, 499 So.2d 132 (La.App. 2d Cir.1986). However, see and compare State v. Stewart, 541 So.2d 336 (La.App. 2d Cir.1989).
Furthermore, we find no error in requiring the sentence for count # 2 to be served consecutively to count # 1 (and its concurrent sentence under count # 3), even though count # 1 and count # 2 arose from the same transaction. The record clearly demonstrates that the defendant was actively and regularly engaged in drug trafficking. The drugs sold were different, indicating indiscriminate drug selling. The facts of this case fully support the imposition of consecutive sentences upon the defendant.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C. Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
A trial court is not required to render a suspended sentence or probation on a *897 first felony offense, but may consider whatever factors and evidence are deemed important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, supra.
The sentencing exposure for distribution of cocaine and distribution of marijuana are the samea minimum sentence of five years at hard labor and a maximum sentence of 30 years at hard labor, and a maximum fine of $15,000.
The trial court found that the 33-year-old defendant was not a youthful offender and that he had previously been involved with drugs. In 1986, the defendant was charged with possession of marijuana with intent to distribute, but he was allowed to plead guilty to possession of marijuana, a misdemeanor. Although the defendant was a first felony offender, the trial court found that he had been convicted of very serious offenses and that he had willingly participated in introducing drugs into the community. In mitigation, the trial court considered that the defendant was a high school graduate, that he had a history of mental problems, and that he was under Social Security disability. Based upon the foregoing, we find that the trial court fully complied with the provisions of LSA-C.Cr.P. Art. 894.1. We further find no error in the trial court's imposition of consecutive sentences of the minimum possible penalties.
We note at this point that the trial court's judgment of commitment contains an error. It specifies that the sentences for count # 2 and count # 3 be served concurrently, with count # 1 being served consecutively to those two counts. However, the sentencing transcript, the trial court's written sentence considerations, and the minutes all clearly provide that sentences for count # 1 and count # 3 shall be concurrent and that the sentence for count # 2 shall be served consecutively. Accordingly, we direct that the judgment be corrected.

CONCLUSION
The defendant's convictions and sentences are affirmed. However, the trial court is directed to correct the judgment of commitment to conform with the sentencing transcript, minute entries, and written sentence considerations to specifically provide that the sentences for count # 1 and count # 3 shall be concurrent and that the sentence for count # 2 shall be consecutive to those sentences.
AFFIRMED.
NOTES
[1] Count # 1 was the marijuana distribution charge from February 3, 1988. Count # 2 was the distribution of cocaine charge, also from February 3, 1988. Count # 3 was the marijuana distribution charge from February 10, 1988.