566 So.2d 1127 (1990)
STATE of Louisiana, Appellee,
v.
Ricky Dean SHEPHERD, Appellant.
No. 21684-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
*1130 Smith & Hingle by J. Randolph Smith, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., John P. Spires, Asst. Dist. Atty., Monroe, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Accused in a three-count bill of information with simple robbery, simple kidnapping, and aggravated sexual battery, Ricky Dean Shepherd (defendant) was found guilty as charged following trial before a six member jury.[1] After a presentence investigation, and being adjudged a second felony offender on the basis of the sexual battery offense and a 1977 forcible rape conviction, he was ordered to serve maximum allowable hard labor sentences *1131 of seven years for simple robbery, five years for simple kidnapping, and thirty years for aggravated sexual battery, all such terms to run consecutively.[2] In accordance with LSA-R.S. 15:571.3C, the thirty year sentence must be served without benefit of diminution through "good time."[3]
This appeal, involving nine assignments of error, ensued. Finding those without merit, we affirm.

FACTS
At about 8:00 p.m. on March 13, 1989, J.M.B., a thirty-one-year-old female, walked to her car parked in front of a dance studio in West Monroe, Louisiana. While unlocking the vehicle door, she was accosted by defendant, who proceeded to drag her across the parking lot and into an alley. In the course of that struggle, she suffered a broken right elbow, as well as numerous cuts, bruises, and scrapes. The assailant next ripped off most of her clothing, leaving her clad in only a bra.
To avoid being raped, J.M.B. falsely informed defendant that she suffered from AIDS. Nevertheless, he forced her to submit to a series of peculiar sexual acts, the lurid details of which need not be recited inasmuch as the defense concedes that aggravated sexual battery occurred. In response to a demand for money, the victim indicated that she had dropped her money and checks when assaulted at her car. Defendant then departed the alley in the direction of the vehicle, taking some of her garments with him. Shortly after the episode, her purse was discovered missing from the auto.

DISCUSSION

Assignments of Error Nos. 1 and 2
These two assignments, which will be discussed together, concern defendant's contention that the evidence is insufficient to sustain his convictions. While acknowledging that three crimes were committed and that the requisite elements were proven at trial, defendant argues the evidence does not establish him as the perpetrator.
The standard of review for sufficiency of evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In cases involving a defendant's claim that he was not the individual who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Long, 408 So.2d 1221 (La.1982). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, *1132 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (La.1984). It is the function of the jury, and not that of the appellate court, to assess the credibility of witnesses. State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989). Where the trier of fact has made a rational credibility determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988).
Defendant asserts that various inconsistencies disclose a reasonable probability that the victim inaccurately identified him. In particular, two police officers, who were summoned to the scene of the crime, recalled J.M.B. indicating that her attacker was clean shaven. Similarly, while at the police station approximately an hour and a half after the incident, she stated she did not think her assailant had facial hair. Also, despite then estimating the individual to weigh 160 to 170 pounds, she later gave a description of between 200 and 220 to a police artist. Under cross-examination, she acknowledged possibly telling the officer at the station that her attacker was clean shaven, and 20 to 25 years of age.
The evidence reveals that at the time of his arrest, two days after the crimes, defendant had hair on his chin and a moustache. Those features apparently went unnoticed by the victim despite her testimony that she observed her attacker's face during the assault, which occurred at a location she characterized as "shadowy." Defendant's age at the time of sentencing, some seven months after the incident, was noted as 32 years.
Nevertheless, notwithstanding such errors in description, the record discloses that the state convincingly carried its burden of proving defendant to be the perpetrator. The authorities conducted four five-person lineups, two physical and two photographic. Defendant's brother, Earnest, appeared in two of those, the first physical viewing and the initial photographic display. While perceiving similarities to the individual who attacked her, J.M.B. on both occasions stated Earnest was not the assailant. With defendant in the second set of lineups, however, she identified him as the malefactor. Thus, during the process of viewing eighteen different men, including defendant's sibling, the victim twice selected defendant. At trial, she again identified him, stating that she did so without doubt. She also testified about a scar she observed on her attacker, and then pointed out, in a photo, a similar disfigurement on defendant's right arm.
The record thus establishes that J.M.B. forcefully and repeatedly identified defendant as her attacker. Such evidence negates any reasonable possibility of misidentification and was properly accepted by the jury, even considering the victim's apparent confusion about the assailant's facial hair and exact weight.

Assignments of Error Nos. 3 and 4
In these assignments, defendant complains of ineffective assistance of counsel and contends the trial court erred in denying his motion for a new trial based on remarks by the state during closing argument. Specifically, the prosecutor made certain purportedly impermissible references to defendant's failure to testify, none of which were met by a motion for mistrial or an objection. Despite failing to lodge any objection at trial, defendant argues the comments abridged his constitutional right to remain silent to such an extent that the issue may be addressed under the federal "plain error doctrine." Alternatively, it is contended his attorney's inaction constituted ineffective assistance. [After trial, defendant retained new counsel.]
Of course, upon motion of a defendant, a mistrial shall be granted when the prosecutor refers to the defendant's failure to testify. LSA-C.Cr.P. Art. 770(3). However, the absence of a timely motion for mistrial constitutes a waiver of the defect. State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985); State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983). Here, defendant failed to appropriately preserve the issue for appellate review.
Regarding defendant's claim of ineffective assistance of counsel, we note that such a complaint more properly is *1133 raised in an application for post-conviction relief. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Mims, 552 So.2d 664 (La.App. 2d Cir.1989). But, if the record contains sufficient evidence pertaining to the issue, the matter may be resolved on direct appeal in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La. 1983). Mindful of the foregoing principles, a review of the present record reveals an adequate basis for evaluating defendant's complaint.
During the state's closing statement, the prosecutor remarked, "[N]ormally there are only two witnessesthe one that did it and the victim, and folks, if you're not going to believe the victim's ID what are you going to believe?" Similarly, in speaking of the victim during rebuttal argument, the assistant district attorney asserted, "[S]he's the only witness to this crime other than the defendant, and do you have any reasonable doubt to disbelieve her?" Reiterating his election to remain mute, defendant contends these statements were intended to emphasize the absence of any testimony by him.
While a direct prosecutorial reference to a defendant's failure to testify mandates a mistrial if requested, State v. Fullilove, 389 So.2d 1282 (La.1980), indirect comments command a remedy only if the remarks were intended to draw attention to a defendant not taking the stand. State v. Jackson, 454 So.2d 116 (La.1984). Applying those precepts to the case at bar, we are satisfied that the statements under scrutiny, being at most an indirect reference to defendant's failure to testify, evince no impermissible intent to highlight defendant's silence. The remarks, in the context made, disclose instead only the state's effort to bolster the credibility of the victim, particularly her identification of the assailant. The defense having attempted to emphasize certain purported inconsistencies in the victim's various descriptions of her attacker, the prosecution simply sought to counter that argument. Any allusion to defendant's choice not to testify appears incidental and prompted by no improper motivation.
We are buttressed in our conclusion by the strikingly similar case of State v. Newman, 491 So.2d 174 (La.App. 3rd Cir.1986), in which the prosecutor, speaking of the victim of an armed robbery, stated during closing argument that "she is the only person who could tell you what really happenedshe and the defendant." As in the case at hand, the defendant contended that the remark impermissibly emphasized his failure to testify. The Third Circuit disagreed, finding that in the context of the state's entire argument the remark was merely an aside of no significance.
Likewise, defendant's complaint here lacks merit. Not only would a motion for mistrial have been ill founded, but also, under the facts of this case, the failure even to request an admonition does not rise to the level of ineffective assistance. Obviously, the trial court did not err in refusing a new trial.

Assignment of Error No. 5
As previously mentioned, based on a 1977 conviction and the present aggravated sexual battery, defendant was adjudged a second felony offender pursuant to LSA-R.S. 15:529.1. He now challenges that determination as error, pointing to a purported constitutional infirmity in his earlier guilty plea to the predicate offense, and to the supposedly improper admission of a "prison packet" into evidence at the habitual offender proceeding. Alternatively, if the trial court correctly admitted the disputed item, defendant still questions whether the evidence sufficiently established his second offender status.
The earlier conviction, a guilty plea to forcible rape pursuant to a plea bargain, arose from an original charge of aggravated rape. During the Boykinization process, that court admonished the defendant that he had "an absolute right to a trial in the aggravated rape, by a Judge or by a Jury." No statement indicated any right to trial by jury for the offense to which he pled guilty. Consequently, defendant avers that a constitutional deficiency in the guilty plea precluded its use as a predicate offense. Defendant, however, forthrightly *1134 acknowledges an inability to cite any cases supporting his view.
Despite defendant's innovative argument, we find his contention to be without merit. Forcible rape is responsive to an aggravated rape charge, LSA-C.Cr.P. Art. 814 A(8), but a plea to a lesser included offense transpires only if the district attorney consents, LSA-C.Cr.P. Art. 558. Rather than bringing defendant to trial for forcible rape, the state planned only to permit a guilty plea to that charge. Had defendant not accepted the plea bargain, he would have faced trial for aggravated rape. Thus, the only charge for which defendant possessed a right to trial by jury was indeed aggravated rape. Defendant, then, received a proper advisement of his rights, which the record reflects he knowingly and voluntarily waived.
Addressing defendant's next contention, we note that the "prison packet" is a certified record from the Department of Public Safety and Corrections containing the judgment in the prior proceeding, a statement of facts and circumstances surrounding the crime, the original indictment, photographs of defendant, and a description disclosing the existence of a tatoo, reading "Hot Ice," on his right arm. Introduction of these documents, duly certified by the records custodian for the department, occurred despite defendant's objection that the requirements of LSA-R.S. 15:585 were not satisfied.
The statute cited by the defense, however, governs only the admissibility of records from the Louisiana Bureau of Criminal Identification and Information, an agency unconnected to the evidence in question. Furthermore, while LSA-R.S. 15:529.1, the Habitual Offender Statute, permits prima facie proof through Subsection F, that latter provision is neither sacramental nor exclusive, and the necessary facts may be established by other competent evidence. State v. Bernard, 366 So.2d 1294 (La.1978); State v. Wheatley, 550 So.2d 724 (La.App. 2d Cir.1989). Hence, in accordance with LSA-C.E. Art. 902(2)(b) and Art. 904, the "prison package" could be properly authenticated and admitted into evidence.[4] Defendant's admissibility complaint accordingly lacks merit.
The trial court likewise properly ascertained, from competent evidence, that defendant was a second felony offender. Of course, in an habitual offender proceeding the state is only required to establish a prior felony conviction and that the defendant is the person convicted of the earlier offense. State v. Bernard, supra. The sole issue to be resolved, on appeal, is whether evidence was introduced upon which the trial judge could find the defendant to be the same person as the previously convicted felon. State v. Curtis, 338 So.2d 662 (La.1976). Identification of the accused may be by testimony of witnesses, expert testimony as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in the duly authenticated record. State v. Evans, 506 So.2d 1283 (La.App. 2d Cir.1987).
According to the record, the trial judge viewed defendant personally in open court and concluded he was the same individual whose photographs appeared in the prison packet. Comparison of a defendant's *1135 appearance to photos in the prison record is sufficient evidence of his identity as the person previously convicted. State v. Curtis, supra. Also, as the district attorney pointed out to the court, defendant's arm bore a tatoo worded "Hot Ice," as did the individual described in the Department of Corrections records.

Assignments of Error Nos. 6, 7 and 8
Defendant also complains of the imposition of allegedly excessive sentences. The record, nevertheless, adequately supports the trial court's sentencing choice.
Of course, a two-step process is utilized to evaluate an allegation of excessiveness of sentence. First, the record must show cognizance was taken, by the lower court, of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
In the second step of our analysis, we must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or amounts to nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). It is well settled that the sentencing judge has wide discretion in the imposition of a sentence within the statutory limits, and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra.
At the sentencing hearing, the trial court noted that defendant was unmarried and had no dependents for whom his imprisonment would entail hardship.[5] In addition, defendant, having been released from incarceration on July 24, 1988 after serving approximately half of the twenty year sentence imposed for the 1977 forcible rape conviction, committed the instant offenses only eight months later. Besides that prior rape conviction, defendant served ninety days in the Ouachita Parish jail in 1976 after being adjudged guilty of obscenity, a conviction precipitated by his entering a neighbor's residence, exposing his genitals, and masturbating. Also, a 1975 conviction for possession of marijuana resulted in thirty days in the parish jail, and he received at least two committments to LTI as a juvenile. Finally, in referring to letters from defendant's employer and fellow employees, the trial court clearly indicated an awareness of his employment status.
Concerning the seriousness of the instant offenses, the trial judge mentioned that defendant's physical assault caused the victim to suffer a fractured right arm, along with bruises and lacerations. She also endured sexual acts characterized by the court as "bestial," and the probability of permanent psychological damage exists. As additionally observed, defendant purposefully contemplated his criminal conduct, which the injured party in no way facilitated.
As the foregoing discussion demonstrates, the sentencing judge satisfactorily complied with LSA-C.Cr.P. Art. 894.1. Furthermore, the maximum sentences imposed are not unduly severe in light of the circumstances of the case and defendant's *1136 background. The very serious nature of the offenses and the harm suffered by the victim are self-evident, and as the trial court stated, "[T]his defendant is a dangerous and incorrigible felon who has not learned from prior incarceration and corrective treatment...."
Similarly, we find no error in the order that the sentences are to be served consecutively. For convictions of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs otherwise. LSA-C.Cr.P. Art. 883. While sentences for two offenses arising from a single course of conduct are thus usually made concurrent, consecutive sentences are justified when the offender poses a strong risk to public safety due to repeated past criminality. State v. Stewart, 541 So.2d 336 (La.App. 2d Cir.1989); State v. Grimes, 527 So.2d 1079 (La.App. 1st Cir.1988), writ denied, 533 So.2d 15 (La.1988). Defendant's prior criminal record, his apparent proclivity for sexual crimes, and his commission of the present offenses only eight months after release from prison, clearly indicate such a danger toward society. That fact, along with the trial court's other sentencing considerations, justifies the imposition of maximum consecutive sentences in this case.

Assignment of Error No. 9
Defendant requested review of the record for errors patent. We find none.

CONCLUSION
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Two months earlier, another jury failed to reach a verdict on any of the counts, resulting in a mistrial.
[2] Ordinarily, of course, aggravated sexual battery is potentially punishable by only 15 years at hard labor. LSA-R.S. 14:43.2. The state here elected, however, to enhance that sentence exposure through the habitual offender proceeding. Hence, under the then-existing provisions of LSA-R.S. 15:529.1 A(1), defendant, as a second felony offender, was subject to jail time ranging from five to thirty years.
[3] At the sentencing hearing, the trial judge directed that defendant's "sentences would be without benefit of probation, parole, or suspension of sentence." (Emphasis added). No statutory authority permitted the imposition of such conditions for either the simple robbery or simple kidnapping convictions. LSA-R.S. 15:529.1 G does mandate, though, that sentences imposed under the Habitual Offender Law, such as the instant one for aggravated sexual battery, be without probation or suspension of sentence. In addition, while LSA-R.S. 15:574.4 A(1) precludes parole eligibility for those convicted of third or subsequent felonies, defendant enjoys the status of a second felony offender inasmuch as multiple convictions entered on the same day constitute only one offense for parole eligibility purposes. State v. Westmoreland, 559 So.2d 479 (La.1990). Thus, the sentences, as reflected in the transcript, were illegal in two respects.

The written judgment contained in the record, nevertheless, provides for the legally proper sentences stated above in the opinion. Thus, the trial court apparently amended its earlier sentencing error via the formal judgment. See LSA-C.Cr.P. Art. 882.
[4] Art. 902. Self-authentication

. . . .
(2) Domestic public documents not under seal.
. . . .
(b) Certified Louisiana public documents. A purported record, book, paper, or other document of the State of Louisiana, or of a department, board, or agency thereof or of a political subdivision of the state or a department, board, or agency of such a subdivision when certified as being the original by an officer or employee who identifies his official position and who either has custody of the document or who is otherwise authorized to make such a certification.
Art. 904. Self-authentication of copies of public documents.
When an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), or (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).
[5] The Master Prison Record contained in the "Prison Packet," discussed infra, lists defendant as the father of one child, apparently the issue of a common law union. However, similar information was not reflected in the present presentence investigation report. During sentencing, the trial court's statement that defendant had no children went unchallenged, and we deem the discrepancy of no significance.