694 So.2d 1107 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
Terry KEYS, Defendant-Appellant
Nos. 29369-KA, 29370-KA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*1111 Chris L. Bowman, Jonesboro, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Douglas L. Stokes, Assistant District Attorney General, for Plaintiff-Appellee.
Before MARVIN, C.J., and NORRIS and BROWN, JJ.
NORRIS, Judge.
Terry Keys was charged by bill of information with possession of cocaine, a Schedule II controlled dangerous substance, in violation of La.R.S. 40:967 C. He was later billed and adjudicated a fourth felony offender, R.S. 15:529.1 A(1)(c), and sentenced to the mandatory life in prison without benefit of parole, probation or suspension of sentence. Keys now appeals his conviction, adjudication and sentence. For the reasons expressed, we affirm.

Factual background
On November 22, 1995 Officers Doug Worley and Jedd Essmeier of the Jonesboro Police Department responded to a domestic disturbance call at Irma Gray's house in Jonesboro. The defendant and his wife, Sylvia Thompson, were involved in a fight. Officer Worley arrived first and learned from Mrs. Gray that Keys and Thompson were in a room in the back of the house.
Officer Worley walked toward the room and stood outside the door, some three feet from Keys, and asked the couple about their dispute. Officer Worley testified that Keys, who appeared fidgety, reached into his back pocket, then leaned to his right and set a brown medicine bottle on a nearby table. Officer Worley moved to his own left to observe the defendant's movements. Keys then turned and walked past Officer Worley. The officer picked up the bottle, opened it, and observed what he believed to be crack cocaine inside. He closed the bottle and placed it in his pocket. He testified that the prescription label on the medicine bottle bore the name "Cleveland Brown"; however, Officer Worley knew of no one by that name at Ms. Gray's house on that night. Chemical analysis confirmed that the bottle contained cocaine.
Officer Worley walked outside where Officer Essmeier was speaking with Keys, who was breathing hard, complaining of chest pains and had a high pulse rate. Keys reported that Ms. Thompson had hit him and that his ribs were hurting, but he did not want to have her arrested. Officer Worley placed Keys under arrest for disturbing the peace, advised him of his Miranda rights, and transported him to the Jonesboro Police Department.
At the police station, Officer Worley entered the room where Keys was seated and removed the bottle from his pocket, intending to inform Keys of the cocaine charge. Before the officer said anything, Keys denied owning the bottle and stated that he had never seen it.
On cross examination, Officer Worley admitted that his report of the incident did not state he saw the bottle emerge from Keys's pocket. Instead, the report only stated that he saw Keys's hand in his pocket and then saw him set the bottle on the table. Officer Worley conceded that this version correctly depicted the incident as he saw it. Further, Officer Worley testified that when he effected the initial arrest (disturbing the peace), he did not mention the cocaine charge to Keys.
Officer Essmeier testified that he saw Officer Worley asking Keys and Ms. Thompson *1112 about the disturbance; he also saw Officer Worley lean towards the doorway to the back room, apparently attempting to observe the defendant when he removed the pill bottle from his pocket. Essmeier saw the pill bottle when Worley arrested Keys.
Mrs. Gray testified that she had told her son to call the police because of the argument between Keys and Ms. Thompson. She restrained Keys to prevent him from attacking his wife, but stated that he could have left had he so desired. Mrs. Gray stated that she never noticed a pill bottle in his pocket and had never seen it until the night before trial. Although the State asked Mrs. Gray if anyone named Cleveland Brown lived in her home, the transcript reflects her answer was inaudible.
Testifying for the defense, Sylvia Thompson stated that on the night in question she never saw Keys take anything out of his pocket and set it on the table. Further, she claimed she never saw Officer Worley pick anything up from the table. Ms. Thompson testified that between the time the police were called and the time they arrived, Keys could have left the house. She recalled Officer Worley saying at the time of the arrest that Keys would be "right back," and that his aunt did not have to go to the jail to get him.
Ms. Thompson also testified that Officer Worley "told" her she had observed Keys put something on the table; however, Ms. Thompson replied that she did not see anything. She also testified that Officer Worley called her later that day, telling her that the case against Keys was otherwise weak, and asking her to say she had seen defendant put the pill bottle on the table. Ms. Thompson testified that she declined to do so. On cross examination, the State attempted to undermine Ms. Thompson's credibility by showing that if Keys went to prison, she would likely be unable to collect child support from him on behalf of their child. Further, while Ms. Thompson denied she ever saw that pill bottle until a police officer showed it to her after Keys was arrested, she admitted that she knew of no one named Cleveland Brown.
Also testifying for the defense was Helen Spivey, Keys's aunt, who lived next door to Mrs. Gray. Ms. Spivey testified that she saw police search Keys in the front yard and then arrest him; one of the officers informed her they were taking him to the police station for disturbing the peace. Later, Keys called her from jail and claimed that the officers were trying to frame him on drug charges. Ms. Spivey testified that at the police station one officer showed her the bottle containing the cocaine and told her that he retrieved it from a table, but another officer told her. "I ain't seen him [Keys] with nothing, there ain't no need of me lying, he said he didn't see Terry with no kind of dope." R. p. 205. On cross examination, however, Ms. Spivey said that the officer did not use the word "dope," but actually told her, "I ain't seen him with nothing." R. p. 206.
Ms. Spivey further testified that the "tall" officer (presumably Officer Worley) told her that the cocaine belonged to Keys, and he had got it off the table. Ms. Spivey testified that this officer told her he did not know who the drugs belonged to; however, on cross examination she could not "really recall" this statement. R. pp. 211-12.
Officer Worley testified in rebuttal that he retrieved the bottle from a table in Mrs. Gray's house after seeing Keys place it there; he denied "planting" evidence. He admitted asking Sylvia Thompson whether she saw Keys put the bottle on the table. He also acknowledged telling Ms. Thompson her statement would strengthen the case against defendant, but denied ever asking her to lie. He testified that Ms. Thompson continuously maintained, "You saw it, I didn't see anything." R.p.214.
The six-member jury found Keys guilty as charged, and the District Court sentenced him to five years at hard labor and a fine. However, the State also charged him as a recidivist; after a hearing, the District Court adjudicated him a fourth felony offender. The trial court vacated the prior sentence and imposed the mandatory sentence of life imprisonment without possibility of parole, probation or suspension of sentence, pursuant to La.R.S. 15:529.1 A(1)(c)(ii).

Discussion: Sufficiency of the evidence
By his second assignment of error Keys urges the evidence was insufficient to *1113 support his conviction. The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Famous, 27,593 (La.App. 2d Cir. 1/24/96), 667 So.2d 1209.
A determination of the weight of evidence is a question of fact which rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. State v. Silman, 95-0154 (La. 11/27/95), 663 So.2d 27. The sufficiency of evidence review does not allow the reviewing court to second guess the fact finder's rational credibility determinations; however, if the evidence is such that reasonable jurors must have a reasonable doubt, then sufficiency of evidence review does not permit jurors to speculate. State v. Harris, 94-0970 (La. 12/8/94), 647 So.2d 337.
Possession of a controlled dangerous substance may be established by showing that the defendant exercised either actual or constructive possession of the substance. State v. Lias, 28,091 (La.App. 2d Cir. 5/8/96), 674 So.2d 1044. "Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (1991).
The jury's finding of guilt in this case largely turned on a credibility evaluation of Officer Worley. At trial, Keys presented testimony attempting to show that this officer framed him by planting evidence, namely the bottle with Cocaine. The jury members obviously rejected this theory, and the finding is within their province as trier of fact.
Nevertheless, in brief Keys questions the sufficiency of the evidence to prove the possession element of the crime, contending that Officer Worley never actually saw him with the bottle of crack cocaine.
Defendant's summary of the evidence is incorrect. While Officer Worley admitted that he did not see the bottle emerge from the defendant's pocket, he did see Keys reach into his pocket and then lean to his right. Officer Worley positively stated that he saw the bottle in Keys's hand as he placed it on the table. The obvious implication of this conduct was an effort to remove it from his person in light of the arrival of police officers. A reasonable trier of fact could conclude that Keys's action of reaching into his pocket, then removing his hand from his pocket and with that hand placing the bottle on the table, was sufficient to establish direct physical contact with and control of the contraband. This assignment of error has no merit.

Failure to grant mistrial
By his first assignment Keys urges the District Court erred in failing to grant a mistrial during the testimony of Officer Worley. On direct examination, Officer Worley recounted the events immediately preceding Keys's arrest, recalling that he complained of chest pains. He testified that Keys's pulse rate was abnormally high. When asked by the State, "What happened next?," Officer Worley responded, "I didn'tI decided at that time, not to advise him of the cocaine charge, due to prior violent dealings with other officers and Mr. Keys." R. p. 89. Defense counsel immediately moved for a mistrial, which the trial judge denied.
In brief Keys argues that the above exchange amounted to an inadmissible reference to other crimes and was deliberately elicited by the state, contrary to La.C.Cr.P. art. 770. We note at the outset that this article, which regulates mandatory mistrial, applies only to remarks by the judge, district attorney or a court official. A police officer is not a "court official" for purposes of mandatory mistrial. State v. Harris, 28,517 (La. App. 2d Cir. 8/21/96), 679 So.2d 549.
Discretionary mistrial is regulated by La.C.Cr.P. art. 771, which states in pertinent part:

*1114 In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial * * * when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The proper remedy for inappropriate remarks by a law enforcement officer is an admonishment directing the jury to disregard the remark. State v. Harris, supra. The trial court should order a mistrial under art. 771 only if it determines that an admonition is not adequate to assure the defendant a fair trial. Mistrial is a drastic remedy and, unless mandatory, is committed to the sound discretion of the trial judge. State v. Parker, 27,417 (La.App. 2d Cir. 9/27/95), 661 So.2d 603, writ denied, 95-2576 (La. 2/16/96), 667 So.2d 1049.
We do not find that the state was attempting to have Officer Worley testify as to the defendant's criminal history. A witness's voluntary, unresponsive testimony which implicates a defendant in other crimes does not require a mistrial, at least where the form of the prosecution's question does not indicate bad faith. State v. Joseph, 437 So.2d 280 (La.1983); State v. Williams, 26,655 (La.App. 2d Cir. 3/1/95), 651 So.2d 331, writ denied 95-0777 (La. 9/15/95), 660 So.2d 448. Further, "vague, non-pointed statements" do not constitute other crimes evidence. State v. Harris, supra. Keys did not request an admonition following Officer Worley's brief, non-responsive statement which did not refer to any prior conviction or relate any specific criminal conduct. Further, Keys pursued additional questioning in this area on cross examining the officer. See, e.g., R. p. 109. In light of these factors, and the drastic nature of a mistrial, we conclude that this assignment presents no reversible error.

Motion to quash habitual offender bill
In this assignment of error Keys advances several arguments pertaining to the District Court's denial of his motion to quash the habitual offender bill of information. Keys had four felony convictions before the instant offense: two for issuing worthless checks, to which he pled guilty on the same day in 1991; a 1993 conviction for possession of cocaine; and a 1991 conviction for distribution of cocaine, La.R.S. 40:967. After the defendant's conviction on the instant charges, the state filed a multiple offender bill of information pursuant to La.R.S. 15:529.1.[1] The district court found that the defendant was a multiple offender and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence.
Distribution of cocaine is a violation of the Uniform Controlled Dangerous Substances Law and carries a maximum penalty of more than five years. A fourth or subsequent felony offender who has been convicted of distribution of cocaine is therefore subject to the life imprisonment provision of La.R.S. 15:529.1 A(1)(c)(ii). Keys asserts, however, that his conviction for distribution of cocaine occurred in 1991, before La.R.S. 15:529.1 A(1)(c)(ii) was amended to provide for life imprisonment for individuals having such a conviction.[2] Therefore, he argues, subjecting him to life imprisonment constitutes an impermissible *1115 ex post facto application of the criminal laws.
Louisiana may not apply criminal laws ex post facto. U.S. Const. art. I, sec. 9; La. Const. Art. 1, § 23. For a criminal or penal law to fall within this prohibition, it must apply to events occurring before its enactment, and must disadvantage the offender affected by it. State v. Rolen, 95-0347, p. 3 (La. 9/15/95), 662 So.2d 446, 448. For the purpose of analyzing the ex post facto implications of repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant "offense" is the current crime, not the predicate crime. State v. Rolen, supra. A statute which prohibits specified future conduct and puts the defendant on notice of the consequences of his contemplated act does not become an ex post facto law simply because liability is based on a previous conviction. Id., at p. 4, 662 So.2d at 448; see also State v. Sigler, 396 So.2d 1305 (La.1981).
In this case the relevant offense, for the purposes of ex post facto analysis, is the instant offense of possession of cocaine. Rolen, supra. La.R.S. 15:529.1 A(1)(c)(ii) was in effect on November 22, 1995, the date Keys committed the instant offense. Accordingly, application of § 529.1 A(1)(c)(ii) to him does not violate the prohibition against ex post facto laws, and the fact that the predicate conviction for distribution of cocaine occurred before § 529.1 A(1)(c)(ii) assumed its current form is irrelevant.
Keys next urges (somewhat inconsistently with his first argument) that the instant felony conviction for possession of cocaine does not suffice to make him liable for a life sentence because La.R.S. 40:967 C carries a maximum sentence of five years. La.R.S. 15:529.1 A(1)(c)(ii) provides:
A. (1) Any person who, after having been convicted within this state of a felony * * * thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows: * * *
(c) If the fourth or subsequent felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then: * * *
(ii) If the fourth or subsequent felony or any of the prior felonies is * * * a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. (Emphasis added.)
It is true that the instant offense (as well as one of the predicate offenses) was possession of cocaine, which carries a maximum sentence of only five years. R.S. 40:967 C(2). However, the amended bill of information alleged that one of the predicate offenses was for distribution of cocaine, which carries a sentence of not less than five nor more than 30 years. R.S. 40:967 B(1). Section 529.1 A(1)(c)(ii) uses the disjunctive "or" to separate the terms "fourth or subsequent felony" and "any of the prior felonies" to activate the mandatory life sentence. Since the amended bill alleges distribution of cocaine, the mandatory life sentence is applicable and Keys was not entitled to have the amended bill quashed on this basis.
Keys further argues that La.R.S. 15:529.1 is unconstitutionally vague because it prescribes two separate punishments for the same crime. However, he does not explain this argument any further; consequently, we find no merit to this contention. La. R.S. 15:529.1 has been repeatedly upheld against charges that it was unconstitutionally vague. See State v. Briggs, 526 So.2d 297 (La.App. 3rd Cir.1988), writ denied 536 So.2d 1213 (1989) (upholding Subsection A(1)); State v. Lee, 364 So.2d 1024, 1032 (La.1978). This argument lacks merit.
Finally, Keys contends that because he was sentenced to life imprisonment after his adjudication as a habitual offender, he should have been charged by grand jury indictment. Prosecution for an offense punishable by life imprisonment requires indictment by grand jury. La. Const. Art. I, § 15; La.C.Cr.P. art. 382 A. However, article 382 *1116 applies only to the substantive crime with which an accused is initially charged, not to the institution of enhanced penalty provisions pursuant to R.S. 15:529.1. State v. Alexander, 325 So.2d 777, 778-79 (La.1976). In addition, a multiple offender bill of information does not charge a crime but is "merely a method of informing the sentencing court of the circumstances and requesting an enhancement-of-penalty." Id., at 779. Thus, "[m]ultiple billing need not be by grand jury indictment in cases involving possible life sentences[.]" State v. Jolla, 337 So.2d 197, 201 (La.1976).
Because the offense with which Keys was initially charged, possession of cocaine, was not punishable by life imprisonment, the law did not require that he be indicted by a grand jury. This argument lacks merit.

Multiple offender adjudication
By his fourth and fifth assignments Keys urges the District Court erred in adjudicating him a fourth felony offender and in admitting the State's exhibits at the hearing. In essence, he advances three arguments. First he contends that his initial sentence for possession of cocaine, five years (the statutory maximum) reflects the fact that he had a felony history. Thus he argues that his sentence may not be further enlarged by the use of his previous felonies as predicate offenses under R.S. 15:529.1. In support he cites State v. Sanders, 337 So.2d 1131 (La.1976), and State v. Cox, 344 So.2d 1024 (La.1977).
In Sanders, the defendant had been convicted of three prior felonies, including burglary and two armed robberies, before being convicted of being a felon in possession of a concealed weapon. The state relied on a previous armed robbery conviction and the previous burglary conviction to prove that he was a convicted felon. After the defendant was convicted of being a felon in possession of a concealed weapon, the state filed a multiple offender bill of information, relying on all three of the previous convictions. The court held that since the legislature had provided for increased penalties for a felon possessing a concealed weapon, it "must not have intended" to allow further enhancement pursuant to the habitual offender statute. Sanders, 337 So.2d at 1134.
In Cox, supra, the defendant pled guilty to simple burglary. While serving time for this offense in the custody of the Department of Corrections he pled guilty to simple escape, La.R.S. 14:110. The version of La.R.S. 14:110 in effect at that time provided for an enhanced penalty for individuals sentenced to the custody of the Department of Corrections, i.e. felons.[3] After the defendant in Cox pled guilty to a felony charge of simple escape, the state filed a recidivist bill. The court found that the legislature had given "no indication" that the simple escape statute should be applied in tandem with the habitual offender statute. The court stated that "there is sufficient doubt that the penalty for a simple escape should be escalated twice by what may be an unforeseen combination of two criminal statutes, and in the absence of an explicit legislative authorization, we will construe the law strictly by refusing to give it such an expansive interpretation." Cox, 344 So.2d at 1026.
In State v. Morris, 429 So.2d 111 (La. 1983), the court stated that, as a matter of statutory construction, "where a defendant's status as a prior felon has subjected him to an enhanced penalty under certain criminal provisions, his sentence may not be further enlarged by application of the habitual offender law." Id. at 122. The court explained that cases such as Sanders and Cox involved statutes which took into consideration the fact of defendant's previous felony conviction, and that "in the absence of express legislative authorization, strict construction requires that a penalty not be escalated twice for what may be an unforeseen combination of two criminal statutes." Id.
La.R.S. 40:967 C does not subject any defendant to an enhanced penalty by virtue of his status as a prior felon. Accordingly, the district court did not err in enhancing Keys's sentence pursuant to La.R.S. 15:529.1. Morris, supra.
*1117 The fact that Keys's sentence for possession of cocaine apparently reflected his prior felony history (in accord with La. C.Cr.P. art. 894.1) does not exempt him from sentencing as a multiple offender. State v. Veal, 565 So.2d 1096, 1097 (La.App. 4th Cir. 1990). In addition, the District Court vacated Keys's initial sentence for possession of a controlled dangerous substance before sentencing him as a habitual offender; thus any issues relating to that sentence are moot. See State v. Page, 95-2401, p. 26 (La.App. 4th Cir. 8/21/96), 680 So.2d 700, 716. This argument lacks merit.
The defendant's second argument contests the validity of using one of the prior convictions as a felony. Specifically, he argues that the Jackson Parish bills of information, No. 29,029 and 29,112, for issuing worthless checks, charged him only with misdemeanors, whereas he ultimately pled guilty to (and was sentenced on) two felonies. Arguing that these felony convictions were not responsive to the misdemeanor charges, he submits they should not be valid as a predicate felony.[4]
Bill of information number 29,029 charged him with issuing six worthless checks within a 180 day period; bill of information number 29,112 charged him with issuing five worthless checks within a 180 day period. Each worthless check was for under $100, but the aggregate amount in each bill was over $100 and less than $500. The bills did not explicitly aggregate the amounts of the individual checks.
A bill of information must contain a plain, concise, and definite written statement of the essential facts constituting the offense charged. La. C.Cr.P. art. 464. The technical sufficiency of a bill may not be questioned after conviction where the accused has been fairly informed of the charge against him by the bill of information, has not been prejudiced, has not raised an objection thereto prior to the judgment of guilt, and is protected against further prosecution by examination of the pleadings and the evidence. State v. James, 305 So.2d 514 (La. 1974); State v. Black, 28,100 (La.App. 2 Cir. 2/28/96) 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Thus, if the defendant does not challenge the sufficiency of the bill of information at trial, the bill must be held sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." James at 517. A motion for a bill of particulars is the preferred method to cure an ambiguous bill of information. State v. Randolph, 334 So.2d 687 (La.1976). In addition, the Boykin colloquy may be utilized to show that the defendant was correctly apprised of the exact nature of the charge. State v. Guidry, 93 1091 (La.App. 1st Cir. 4/8/94), 635 So.2d 731, writ denied 94-0960 (La.7/1/94), 639 So.2d 1163.
We agree with Keys that the Jackson Parish bills of information charging him with issuing worthless checks are not models of clarity in pleading. However, prior to entering his guilty pleas, he did not contest the bills. He entered into a plea bargain with an agreed-to sentence. Keys was represented by counsel, and at the Boykin hearing, the District Court advised Keys that he was charged with "issuing worthless checks in two separate bills and a total of 11 counts," that he faced a maximum sentence of two years' imprisonment and a $2,000 fine on each bill, and:
"[a] guilty plea to this felony can result in your being treated as a habitual offender at this time if you have a prior felony conviction or in the future if you incur another felony conviction. If you're found to be a habitual offender the resulting penalty can be much greater than the penalty a first offender might receive." (Emphasis supplied.)
The worthless check statute in effect at the time required the aggregation of all worthless checks written within a 180-day period to determine the grade of the offense.[5]
*1118 In short, the transcript makes it clear that the court properly treated the checks in the aggregate as a single felony charge for each bill, and that Keys understood that he was pleading guilty to a felony under each bill. See Exhibit S-12, p. 8. In addition, the court correctly informed him of the penalty he faced pursuant to La. R.S. 14:71 D. The bill can be reasonably construed to charge the felony offense of middle grade issuance of worthless checks. Any ambiguity in the bill was waived by Keys's failure to object to it, and cured by the guilty plea colloquy. State v. Guidry, supra; State v. Randolph, supra. Finally, Keys was sentenced to two concurrent one-year suspended sentences after his guilty pleas, not the eleven sentences one would expect if he had truly been convicted on eleven misdemeanor "counts." We find no basis for disregarding these guilty pleas as a predicate offense for the instant adjudication. The argument does not present reversible error.
The third argument is that because the bills of information charging his prior felony convictions do not contain his fingerprints, his identity has not been sufficiently proven.
The state filed a multiple offender bill of information pursuant to La. R.S. 15:529.1 D(1)(a). The state carries the burden of proof in habitual offender proceedings. R.S. 15:529.1 D(1)(b). Subsection F of that statute provides:
F. The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
Although this statute designates the properly authenticated certificates of the warden as prima facie evidence of the imprisonment and discharge of the person under the conviction set forth therein, the necessary facts constituting proof that the accused is an habitual offender may be established by other competent evidence. State v. Barrow, 352 So.2d 635, 637 (La.1977). The proof set forth in Section 529.1 F is neither sacramental nor exclusive to such a showing. Id. In an habitual offender proceeding the state is only required to establish a prior felony conviction and that the defendant is the person convicted of the earlier offense. State v. Shepherd, 566 So.2d 1127, 1134 (La.App. 2d Cir.1990). Identification of the accused may be by testimony of witnesses, expert testimony as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in the duly authenticated record. Id. The sole issue on appeal is whether the evidence introduced at trial will support the finding that Keys is the same person as the previously convicted felon. Id.
Judy Huff, a probation and parole specialist with the State Department of Public Safety and Corrections, identified Keys in court as the person she supervised on probation for his 1994 conviction and probated sentence for possession of cocaine in Lincoln Parish, bill of information number 37,735, as well as for his 1991 conviction and probated sentence for distribution of cocaine in Jackson Parish, number 29,143. She identified the bills of information and the minutes pertaining to the plea and sentence in each case as items she had been furnished in connection with her supervision of Keys. She admitted she was not present in court when Keys pled *1119 guilty to or was actually sentenced on these charges. However, she testified that Keys reported to her office as the person convicted on each of the charges, admitted to her he was the person convicted on the charge and discussed the cases in detail with her. She testified that, as to each conviction, she required Keys to sign a form acknowledging the conditions of his probation. She further testified that she was present with Keys in court in Lincoln Parish for a revocation hearing in number 37,735. Ms. Huff testified that she had worked closely with Keys and knew that he was the person she had supervised on probation in connection with theses particular convictions. She testified she had absolutely no doubt that the Terry Keys whose probation she had supervised on both felony convictions referred to was the same Terry Keys currently on trial as a recidivist.
Sergeant Michael Lestage, a Ruston police detective, testified that he had investigated the case that resulted in the possession of cocaine charge, number 37,735 in Lincoln Parish, and the plea of nolo contendere to that charge in 1994. Sergeant Lestage testified that he spoke to Keys at the Lincoln Parish detention center after Keys entered his plea. He identified the bill of information in number 37,735 and testified that he was certain that the defendant who he investigated was the same Terry Keys on trial as a recidivist.
Jackson Parish Sheriff's Deputy Andy Brown testified that he was the drug coordinator for the Jackson Parish Sheriff's Department in January of 1991. In this capacity he came into contact with the defendant, Terry Keys, and prepared the report that resulted in bill number 29,143 being filed. Deputy Brown examined the bill of information charging Keys with distribution of cocaine in Jackson Parish, number 29,143. He identified Keys in court as the person involved in that investigation and named in the bill of information. He testified that he was certain that Keys was the same person who was convicted of the charges that he investigated in 1991 in Jackson Parish.
As noted, the State introduced the bills of information, minute entries reflecting the guilty or nolo pleas, and transcripts of the Boykin hearings and sentencing hearings for each of the three prior felonies.
The State also called Officer Worley, who had arrested Keys on the instant drug offense and testified at his trial. He positively identified the defendant, but admitted he was not in court when Keys was convicted.
The documentary evidence, together with the positive identification Ms. Huff and Mr. Nunn, and the corroborating identification from the law enforcement officers, was sufficient to establish beyond a reasonable doubt that Terry Keys was the same person who had been convicted of the previous felonies. See State v. Young, 27,237, pp. 8-9 (La. App.2d Cir. 8/23/95), 660 So.2d 548, 553; State v. Banks, 612 So.2d 822, 826-27 (La. App. 1st Cir.), writ denied 614 So.2d 1254 (1993). The mere fact that the state failed to produce a fingerprint expert or fingerprint evidence does not undermine this conclusion. See State v. Wilkinson, 612 So.2d 833, 836-37 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1255 (1993); State v. Jones, 537 So.2d 1244, 1251 (La.App. 4th Cir.1989); State v. Moten, 510 So.2d 55, 63-64 (La.App. 1st Cir.), writ denied 514 So.2d 126 (La.1987). This assignment does not present reversible error.

Excessive sentence
By his sixth assignment of error Keys challenges as excessive the statutorily mandated sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Article I, § 20 of the Louisiana Constitution protects individuals from cruel, excessive, or unusual punishment. Even a sentence within the statutory limits may violate this provision. State v. Sepulvado, 367 So.2d 762 (La.1979).
A sentence is grossly disproportionate to the seriousness of the offense if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Lobato, 603 So.2d 739 (La.1992).
The punishment mandated by La. R.S. 15:529.1 is excessive if the sentence *1120 makes no measurable contribution to the acceptable goals of punishment or the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 96-1263 (La.6/28/96), 676 So.2d 552; State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669. If a mandatory minimum sentence prescribed by R.S. 15:529.1 is constitutionally excessive in a given case, the trial judge must reduce the sentence to one that is not constitutionally excessive. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370.
The presentence investigation report reveals that the defendant has a criminal history spanning nearly a quarter-century. In 1973 he was arrested for middle grade theft and sentenced to two years in the parish jail. In 1974 he was charged with aggravated escape, armed robbery, misdemeanor theft, and aggravated assault. He pleaded guilty to aggravated escape and received a ten-year sentence; the remaining charges were not prosecuted.
In 1982 he was convicted of issuing worthless checks, resulting in a fine. In 1984 he was arrested for battery of a police officer, but no disposition of these charges was shown. In 1987 he was charged with simple battery and received a fine; in the same year he was charged with possession of stolen merchandise, resulting in a guilty plea to misdemeanor possession of stolen property.
In 1988, he was arrested for theft of dogs. This charge was dropped. Only a few days later he was arrested for disturbing the peace. On this charge he was sentenced to nine days in the parish jail.
The state relied on Keys's 1991 convictions for issuing worthless checks and distribution of cocaine, as well as his 1994 conviction for possession of cocaine, at the multiple offender proceeding. In addition to these charges, Keys was acquitted in 1994 on charges of being a felon in possession of a firearm. He was arrested in 1995 on charges of driving a car with no license plate, no registration, and no proof of insurance. He was ordered to pay a fine on each of these charges. He was arrested again in 1995 on charges of driving with no license plate and no registration, and again was ordered to pay a fine. Also in 1995, Keys was found guilty of cruelty to animals and ordered to pay a fine and court costs. At the time of sentencing, Keys faced a pending charge of possession of a Schedule IV controlled dangerous substance.
After close examination we have concluded that the instant sentence is not grossly out of proportion to the circumstances of the offense and the offender. Although the sentence is severe, probationary treatment and previous periods of incarceration have failed to deter Keys from a disturbing propensity to engage in a wide variety of criminal activity.
On the whole, we are unable to declare that the instant life sentence is constitutionally excessive. See State v. White, 27,188 (La.App. 2d Cir. 8/23/95), 660 So.2d 515; State v. Lewis, 576 So.2d 1106 (La.App. 3rd Cir.), writ denied 580 So.2d 669 (1991). This assignment does not present reversible error.

Error Patent
Review for error patent discloses that the District Court failed to give Keys credit for any time served. This constitutes error patent, notwithstanding that it was a life sentence. La. C.Cr.P. art. 880; State v. King, 604 So.2d 661 (La.App. 1st Cir.1992). The sentence is hereby amended to allow such credit. State v. Davis, 28,075 (La. App.2d Cir. 5/8/96), 674 So.2d 1013.

Conclusion
For the foregoing reasons, Terry Keys's conviction for possession of cocaine and his adjudication as a fourth felony offender are affirmed. His sentence of life imprisonment without benefit of parole, probation or suspension of sentence is also affirmed, but the sentence is amended to reflect the credit for time served.
AFFIRMED.
NOTES
[1] Keys asserts in brief that he was charged as a recidivist under R.S. 15:529.1 A(1)(b)(ii), the third felony offender section. However, the State filed an amended bill on May 7, 1996, charging him as a fourth felony offender, R.S. 15:529.1(A)(1)(c). This is the charge on which he was adjudicated on June 5, 1996.
[2] La.R.S. 15:529.1 has been amended several times since 1991. La. R.S. 15:529.1 A(1)(c)(ii) was most recently amended by Acts 1995, No. 1245, § 1. This amendment took effect on August 15, 1995. See La. Const. Art. III, § 19.
[3] See State v. Goodin, 550 So.2d 801 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1276 (1990). With respect to non-felons who escaped from custody, simple escape was a misdemeanor. Id.
[4] Keys's two worthless check convictions, which were entered on the same day, were treated as one conviction for the purpose of the habitual offender adjudication. See State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991).
[5] La. R.S. 14:71 F provided: "When the offender has issued more than one worthless check within a one hundred eighty day period, the aggregate of the amount of all worthless checks issued during that one hundred eighty day period shall determine the grade of the offense." (Emphasis added.) This was later amended by La. Acts 1993. No. 670, § 1.